# EXHIBIT A-3

//0v0

1694   property or improvements resulting from the Renovations or other's connection
1695   with such Renovations, or for any inconvenience or annoyance occasioned by such Renovations
1696   or Landlord's actions in connection with such Renovations.

1697       29.25. Child Care Facilities. Tenant acknowledges that any child care facilities which
1698   may be later located on the Real Property (the "**Child Care Facilities**") which are available to
1699   Tenant and Tenant's employees shall be provided by a third party (the "**Child Care Provider**")
1700   which is leasing space on the Real Property, and not by Landlord. If Tenant or its employees
1701   choose to use the Child Care Facilities, Tenant acknowledges that Tenant and Tenant's
1702   employees are not relying upon any investigation which Landlord may have conducted
1703   concerning the Child Care Provider or any warranties or representation with respect thereto, it
1704   being the sole responsibility of Tenant and the individual user of the Child Care Facilities to
1705   conduct any and all investigations of the Child Care Facilities prior to making use thereof.
1706   Accordingly, Landlord shall have no responsibility with respect to the quality of care provided
1707   by the Child Care Facilities, or for any acts or omissions of the Child Care Provider.
1708   Furthermore, Tenant, for Tenant and for Tenant's employees, hereby agrees that Landlord, its
1709   partners, subpartners and their respective officers, agents, servants, employees, and independent
1710   contractors shall not be liable for, and are hereby released from any responsibility for any loss,
1711   cost, damage, expense or liability, either to person or property, arising from the use of the Child
1712   Care Facilities by Tenant or Tenant's employees. Tenant hereby covenants that Tenant shall
1713   inform all of Tenant's employees of the provisions of this Section 29.25 prior to such employees'
1714   use of the Child Care Facilities.

1715       29.26. Good Faith. Except (i) for matters for which there is a standard of consent or
1716   discretion specifically set forth in this Lease, (ii) matters which could have an adverse effect on
1717   the Building's heating, ventilation and air-conditioning system, plumbing system, electrical
1718   system, or life safety systems, or which could affect the exterior appearance of the Building, or
1719   (iii) matters covered by Articles 3, 4, 10 or 19 of this Lease (collectively, the "**Excepted**
1720   **Matters**"), any time the consent of Landlord or Tenant is required under this Lease, such consent
1721   shall not be unreasonably withheld or delayed, and, except with regard to the Excepted Matters,
1722   whenever this Lease grants Landlord or Tenant the right to take action, exercise discretion,
1723   establish rules and regulations or make an allocation or other determination, Landlord and
1724   Tenant shall act reasonably and in good faith.

1725       29.27. Asbestos Disclosures. Landlord has advised Tenant that there is asbestos-
1726   containing material ("**ACM**") in the Building. Landlord has further advised Tenant that,
1727   according to the United States Environmental Protection Agency: "the presence of asbestos in a
1728   building does not necessarily mean that the health of building occupants is necessarily in danger.
1729   As long as asbestos containing material (ACM) remains in good condition and is not disturbed,
1730   exposure is unlikely." Under separate cover, Landlord will deliver to Tenant a disclosure
1731   statement regarding asbestos in the Building, which notice complies with the requirements of
1732   Section 25915 of the California Health and Safety Code.

LOSA2\329548.2

29.28. ERISA. Tenant represents and warrants that:

29.28.1. Neither Tenant nor any of its **"affiliates"** (within the meaning of Part V(c) of Prohibited Transaction Exemption 84-14, 49 Fed. Reg. 9494 (1984), as amended (**"PTE 84-14"**)) has, or during the immediately preceding year has exercised the authority to:

(i)     appoint or terminate Landlord, or any of its partners, as investment manager over assets of any **"employee benefit plan"** (as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended (**"ERISA"**) invested in, or sponsored by, Landlord; or

(ii)    negotiate the terms of a management agreement (including renewals or modifications thereof) with Landlord, or any of its partners, on behalf of any such plan;

29.28.2. To the best of Tenant's knowledge, Tenant is not "related" to Landlord, or any of its partners (as determined under in Part V(h) of PTE 84-14);

29.28.3. Tenant has negotiated and determined the terms of this Lease at arm's length, as such terms would be negotiated and determined by the Tenant with unrelated parties; and

29.28.4. Tenant is not an **"employee benefit plan"** as defined in Section 3(3) of ERISA, a **"plan"** as defined in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or an entity deemed to hold **"plan assets"** within the meaning of 29 C.F.R. §2510.3-101 of any such employee benefit plan or plan.

29.29. Hazardous Materials.

29.29.1. For purposes of this Lease, the term **"Hazardous Materials"** includes (i) any **"hazardous material"** as defined in Section 25501(o) of the California Health and Safety Code, (ii) hydrocarbons, polychlorinated biphenyls or asbestos, (iii) any toxic or hazardous materials, substances, wastes or materials as defined pursuant to any other applicable state, federal or local law or regulation, and (iv) any other substance or matter which may result in liability to any person or entity as result of such person's possession, use, release or distribution of such substance or matter under any statutory or common law theory.

29.29.2. Tenant shall not cause or permit any Hazardous Materials to be brought upon, stored, used, generated, released or disposed of on, under, from or about the Premises (including without limitation the soil and groundwater thereunder) without the prior written consent of Landlord, which consent may be given or withheld in Landlord's sole and absolute discretion. Notwithstanding the foregoing, Tenant shall have the right, without obtaining prior written consent of Landlord, to utilize within the Premises a reasonable quantity of standard office products that may contain Hazardous Materials (such as photocopy toner, **"White Out"**, and the like), provided however, that (i) Tenant shall maintain such products in their original retail packaging, shall follow all instructions on such packaging with respect to the storage, use and disposal of such products, and shall otherwise comply with all applicable laws with respect to such products, and (ii) all of the other terms and provisions of this Section 29.29 shall apply

- 41 -

with respect to Tenant's storage, use and disposal of all such products. Landlord may, in its sole and absolute discretion, place such conditions as Landlord deems appropriate with respect to Tenant's use of any such Hazardous Materials, and may further require that Tenant demonstrate that any such Hazardous Materials are necessary or useful to Tenant's business and will be generated, stored, used and disposed of in a manner that complies with all applicable laws and regulations pertaining thereto and with good business practices. Tenant understands that Landlord may utilize an environmental consultant to assist in determining conditions of approval in connection with the storage, generation, release, disposal or use of Hazardous Materials by Tenant on or about the Premises, and/or to conduct periodic inspections of the storage, generation, use, release and/or disposal of such Hazardous Materials by Tenant on and from the Premises, and Tenant agrees that any costs incurred by Landlord in connection therewith shall be reimbursed by Tenant to Landlord as additional rent hereunder upon demand.

29.29.3. On each anniversary of the Commencement Date until the expiration or sooner termination of this Lease, Tenant shall disclose to Landlord in writing the names and amounts of all Hazardous Materials which were stored, generated, used, released and/or disposed of on, under or about the Premises for the twelve-month period prior thereto, and which Tenant desires to store, generate, use, release and/or dispose of on, under or about the Premises for the succeeding twelve-month period. In addition, to the extent Tenant is permitted to utilize Hazardous Materials upon the Premises, Tenant shall promptly provide Landlord with complete and legible copies of all the following environmental documents relating thereto: reports filed pursuant to any self-reporting requirements; permit applications, permits, monitoring reports, emergency response or action plans, workplace exposure and community exposure warnings or notices and all other reports, disclosures, plans or documents (even those which may be characterized as confidential) relating to water discharges, air pollution, waste generation or disposal, and underground storage tanks for Hazardous Materials; orders, reports, notices, listings and correspondence (even those which may be considered confidential) of or concerning the release, investigation of, compliance, cleanup, remedial and corrective actions, and abatement of Hazardous Materials; and all complaints, pleadings and other legal documents filed by or against Tenant related to Tenant's use, handling, storage, release and/or disposal of Hazardous Materials.

29.29.4. Landlord and its agents shall have the right, but not the obligation, to inspect, sample and/or monitor the Premises and/or the soil or groundwater thereunder at any time to determine whether Tenant is complying with the terms of this Section 29.29, and in connection therewith Tenant shall provide Landlord with full access to all facilities, records and personnel related thereto. If Tenant is not in compliance with any of the provisions of this Section 29.29, or in the event of a release of any Hazardous Material on, under or about the Premises caused or permitted by Tenant, its agents, employees, contractors, licensees or invitees, Landlord and its agents shall have the right, but not the obligation, without limitation upon any of Landlord's other rights and remedies under this Lease, to immediately enter upon the Premises without notice and to discharge Tenant's obligations under this Section 29.29 at Tenant's expense, including without limitation the taking of emergency or long-term remedial action. Landlord and its agents shall endeavor to minimize interference with Tenant's business in connection therewith, but shall not be liable for any such interference. In addition, Landlord, at Tenant's expense, shall have the right, but not the obligation, to join and participate in any legal proceedings or actions initiated in connection with any claims arising out of the storage,

- 42 -

1817    generation, use, release and/or disposal by Tenant or its agents, employees, contractors, licensees
1818    or invitees of Hazardous Materials on, under, from or about the Premises.

1819            29.29.5. If the presence of any Hazardous Materials on, under, from or about the
1820    Premises or the Real Property caused or permitted by Tenant or its agents, employees,
1821    contractors, licensees or invitees results in (i) injury to any person, (ii) injury to or any
1822    contamination of the Premises or the Real Property, or (iii) injury to or contamination of any real
1823    or personal property wherever situated, Tenant, at its expense, shall promptly take all actions
1824    necessary to return the Premises and the Real Property and any other affected real or personal
1825    property owned by Landlord to the condition existing prior to the introduction of such Hazardous
1826    Materials and to remedy or repair any such injury or contamination, including without limitation,
1827    any cleanup, remediation, removal, disposal, neutralization or other treatment of any such
1828    Hazardous Materials. Notwithstanding the foregoing, Tenant shall not, without Landlord's prior
1829    written consent, which consent may be given or withheld in Landlord's sole and absolute
1830    discretion, take any remedial action in response to the presence of any Hazardous Materials on,
1831    from, under or about the Premises or the Real Property or any other affected real or personal
1832    property owned by Landlord or enter into any similar agreement, consent, decree or other
1833    compromise with any governmental agency with respect to any Hazardous Materials claims;
1834    provided however, Landlord's prior written consent shall not be necessary in the event that the
1835    presence of Hazardous Materials on, under or about the Premises or the Real Property or any
1836    other affected real or personal property owned by Landlord (i) imposes an immediate threat to
1837    the health, safety or welfare of any individual and (ii) is of such a nature that an immediate
1838    remedial response is necessary and it is not possible to obtain Landlord's consent before taking
1839    such action. To the fullest extent permitted by law, Tenant shall indemnify, hold harmless,
1840    protect and defend (with attorneys acceptable to Landlord) Landlord and any successors to all or
1841    any portion of Landlord's interest in the Premises and the Real Property and any other real or
1842    personal property owned by Landlord from and against any and all liabilities, losses, damages,
1843    diminution in value, judgments, fines, demands, claims, recoveries, deficiencies, costs and
1844    expenses (including without limitation attorneys' fees, court costs and other professional
1845    expenses), whether foreseeable or unforeseeable, arising directly or indirectly out of the use,
1846    generation, storage, treatment, release, on- or off-site disposal or transportation of Hazardous
1847    Materials (A) on, into, from, under or about the Premises during the Term regardless of the
1848    source of such Hazardous Materials unless caused solely by Landlord or (B) on, into, from,
1849    under or about the Premises, the Building or the Real Property and any other real or personal
1850    property owned by Landlord caused or permitted by Tenant, its agents, employees, contractors,
1851    licensees or invitees. Such indemnity obligation shall specifically include, without limitation,
1852    the cost of any required or necessary repair, restoration, cleanup or detoxification of the
1853    Premises, the Building and the Real Property and any other real or personal property owned by
1854    Landlord, the preparation of any closure or other required plans, whether or not such action is
1855    required or necessary during the Term or after the expiration of this Lease and any loss of rental
1856    due to the inability to lease the Premises or any portion of the Building or Real Property as a
1857    result of such Hazardous Material or remediation thereof. If it is at any time discovered that
1858    Hazardous Materials have been released on, into, from, under or about the Premises during the
1859    Term, or that Tenant or its agents, employees, contractors, licensees or invitees may have caused
1860    or permitted the release of a Hazardous Material on, under, from or about the Premises, the
1861    Building or the Real Property or any other real or personal property owned by Landlord, Tenant
1862    shall, at Landlord's request, immediately prepare and submit to Landlord a comprehensive plan,

LOSA2\329548.2

Premises, the Building or the Real Property or any other real or personal property owned by Landlord to the condition existing prior to the introduction of such Hazardous Materials. Upon Landlord's approval of such cleanup plan, Tenant shall, at its expense, and without limitation of any rights and remedies of Landlord under this Lease or at law or in equity, immediately implement such plan and proceed to cleanup such Hazardous Materials in accordance with all applicable laws and as required by such plan and this Lease. The provisions of this <u>Section 29.29.5</u> shall expressly survive the expiration or sooner termination of this Lease.

ARTICLE 30
<u>ADDITIONAL LEASE PROVISIONS</u>

30.1. <u>Option to Extend.</u>

30.1.1. <u>Option</u>. Tenant shall have the option ("Renewal Option") to extend the Term of this Lease, on all the provisions contained in this Lease, except as to the Base Rent. Such Renewal Option shall be for an additional five (5) year period (the "Option Term") following the expiration of the initial Term. If Tenant elects to exercise such Renewal Option, such Renewal Option shall be exercised by Tenant giving written notice of its exercise of the Renewal Option (the "Option Notice") to Landlord at least nine (9) months, but not more than twelve (12) months, before the expiration of the initial Term. If such Option Notice is not sent during such three (3) month period, such Renewal Option shall be null and void and in no event shall Tenant have any right to extend the Term or renew the Lease beyond the Option Term provided herein.

30.1.2. <u>Option Personal</u>. The Renewal Option is personal to Tenant and may not be exercised or assigned, voluntarily or involuntarily, by, or to, any person or entity other than Tenant. The Renewal Option is not assignable separate and apart from this Lease. In the event that, at the time the Renewal Option is exercisable by Tenant, this Lease has been assigned, or a sublease exists (as to twenty percent (20%) or more of the Relocation Premises), the Renewal Option shall be deemed null and void and Tenant, any assignee, or any sublessee, shall not have the right to exercise the Renewal Option.

30.1.3. <u>Effect of Default on Renewal Option</u>. Tenant shall have no right to exercise the Renewal Option, (a) if, at the time permitted for the exercise of such Renewal Option, or at any time prior to the commencement of the Option Term, a Tenant default has occurred under any of the provisions of this Lease, or (b) in the event that Landlord has given to Tenant two (2) or more notices of default under this Lease during the twelve (12) month period prior to the time that Tenant intends to exercise the Renewal Option.

30.1.4. <u>Base Rent During the Option Term</u>. Tenant shall pay to Landlord, as Base Rent for the Premises during the Option Term, ninety-five percent (95%) of the Fair Market Rental Rate (as hereinafter defined). Fair Market Rental Rate shall mean the rate being charged to renewal tenants for comparable space by Landlord in the Building or, if not enough comparable transactions exist in the Building, then the rate being charged to renewal tenants for comparable space in similar buildings in downtown Los Angeles, with similar amenities, taking into consideration the size, location, floor level, the proposed term of the Option Term, the extent

- 44 -

of the services to be provided under such other terms and conditions and in each instance disregarding "tenant concessions" then being offered to prospective renewal tenants in the Building or comparable buildings. The term "tenant concessions" shall include, without limitation, so-called free rent, tenant improvement allowances, lease takeovers, brokerage commissions, etc. All Rent payable during the Option Term shall be payable in the same manner and under the same terms and conditions as Rent is paid during the initial Term. Notwithstanding anything to the contrary set forth in this Section 30.1, in no event shall the Base Rent for the Option Term be less than the effective Base Rent payable for the period immediately preceding the commencement of the Option Term.

   30.1.5. <u>Documentation</u>.  Landlord and Tenant shall execute and deliver appropriate documentation to evidence any renewal of the Lease and the terms and conditions of the Lease during the Option Term.

   30.1.6. <u>Fair Market Rental Rate</u>.  Landlord shall determine the Fair Market Rental Rate by using its good faith judgment.  Landlord shall use commercially reasonable to provide written notice of such amount within thirty (30) days (but in no event later than sixty (60) days) after Tenant sends the Option Notice to Landlord exercising the Renewal Option. Tenant shall have fifteen (15) days (the "Tenant's Review Period") after receipt of Landlord's notice of the new rental within which to accept such rental or to reasonably object thereto in writing.  In the event Tenant objects, Landlord and Tenant shall attempt to agree upon such Fair Market Rental Rate, using their best good faith efforts.  If Landlord and Tenant fail to reach agreement within fifteen (15) days following Tenant's Review Period (the "Outside Agreement Date"), then each party shall place in a separate sealed envelope their final proposal as to Fair Market Rental Rate and such determination shall be submitted to arbitration in accordance with subsections (a) through (e) below.  Failure of Tenant to so elect in writing within Tenant's Review Period shall conclusively be deemed its approval of the new rental determined by Landlord.  In the event that Landlord fails to timely generate the initial written notice of Landlord's opinion of the Fair Market Rental Rate which triggers the negotiation period of this provision, then Tenant may commence such negotiations by providing the initial notice, in which event Landlord shall have fifteen (15) days ("Landlord's Review Period") after receipt of Tenant's notice of the new rental within which to accept such rental.  In the event Landlord does not affirmatively in writing consent to Tenant's proposed rental, such proposed rental shall be deemed rejected and Landlord and Tenant shall attempt in good faith to agree upon such Fair Market Rental Rate, using their best good faith efforts.  If Landlord and Tenant fail to reach agreement within fifteen (15) days following Landlord's Review Period (which shall be, in such event, the "Outside Agreement Date" in lieu of the above definition of such date), then each party shall place in a separate sealed envelope their final proposal as to Fair Market Rental Rate and such determination shall be submitted to arbitration in accordance with subsections (a) through (e) below.

   (a)    Landlord and Tenant shall meet with each other within five (5) business days of the Outside Agreement Date and exchange the sealed envelopes and then open such envelopes in each other's presence.  If Landlord and Tenant do not mutually agree upon the Fair Market Rental Rate within one (1) business day of the exchange and opening of envelopes, then, within ten (10) business days of the exchange and opening of envelopes Landlord and Tenant shall agree upon and jointly appoint a single arbitrator who shall by profession be a real estate

- 45 -

brokers who have been active over the last ten years in leasing and the office of such
appointment in the leasing of commercial high-rise properties in the vicinity of the Building.
Neither Landlord nor Tenant shall consult with such broker as to his or her opinion as to Fair
Market Rental Rate prior to the appointment. The determination of the arbitrator shall be limited
solely to the issue of whether Landlord's or Tenant's submitted Fair Market Rental Rate for the
Premises is the closer to the actual Fair Market Rental Rate for the Premises as determined by
the arbitrator, taking into account the requirements of this Exhibit regarding same. Such
arbitrator may hold such hearings and require such briefs as the arbitrator, in his or her sole
discretion, determines is necessary.

(b)     The arbitrator shall, within thirty (30) days of his or her appointment,
reach a decision as to whether the parties shall use Landlord's or Tenant's submitted Fair Market
Rental Rate, and shall notify Landlord and Tenant thereof. The decision of the arbitrator shall be
binding upon Landlord and Tenant, except as provided below.

(c)     The decision of the arbitrator shall be binding upon Landlord and Tenant,
except as provided below.

(d)     If Landlord and Tenant fail to agree upon and appoint an arbitrator, then
the appointment of the arbitrator shall be made by the Presiding Judge of the Los Angeles
Superior Court, or, if he or she refuses to act, by any judge having jurisdiction over the parties.

(e)     The cost of arbitration shall be paid by Landlord and Tenant equally.

[SIGNATURES ON NEXT PAGE]

- 46 -

LOSA2\329548.2

IN WITNESS WHEREOF, Landlord and Tenant have caused their duly authorized representatives to execute this Lease as of the day and date first above written.


**LANDLORD:**

**SWC 800 WILSHIRE, LLC,**
a California limited liability company

By:    PRUDENTIAL 800 WILSHIRE GENERAL
      PARTNERSHIP,
      a California general partnership,
      Its Managing Member

      By:    PRUDENTIAL INVESTMENT
            MANAGEMENT, INC.,
            a New Jersey corporation,
            Its Authorized Manager

            By: _Soultana Reeale_
            Name: _Soultana Reeale_
            Title _Vice President_

**TENANT:**

**800 WILSHIRE GROUP, LLC,**
a California limited liability company

By: _[signature]_
Name: _Gabriel Morris_
Its: _Managing Partner_

- 47 -

LOSA2\329548.2



**EXHIBIT A**

## OUTLINE OF PREMISES

[To Be Provided]



EXHIBIT A-1

## RULES AND REGULATIONS

2000       Tenant shall faithfully observe and comply with the following Rules and Regulations.
2001 Landlord shall not be responsible to Tenant for the nonperformance of any of said Rules and
2002 Regulations by or otherwise with respect to the acts or omissions of any other tenants or
2003 occupants of the Real Property.

2004       1.    Tenant shall not alter any lock or install any new or additional locks or bolts on
2005 any doors or windows of the Premises without obtaining Landlord's prior written consent.
2006 Tenant shall bear the cost of any lock changes or repairs required by Tenant. Two keys will be
2007 furnished by Landlord for the Premises, and any additional keys required by Tenant must be
2008 obtained from Landlord at a reasonable cost to be established by Landlord.

2009       2.    All doors opening to public corridors shall be kept closed at all times except for
2010 normal ingress and egress to the Premises.

2011       3.    Landlord reserves the right to close and keep locked all entrance and exit doors of
2012 the Building during such hours as are customary for Comparable Buildings. Tenant, its
2013 employees and agents must be sure that the doors to the Building are securely closed and locked
2014 when leaving the Premises if it is after the normal hours of business for the Building. Any
2015 tenant, its employees, agents or any other persons entering or leaving the Building at any time
2016 when it is so locked, or any time when it is considered to be after normal business hours for the
2017 Building, may be required to sign the Building register. Access to the Building may be refused
2018 unless the person seeking access has proper identification or has a previously arranged pass for
2019 access to the Building. Landlord and his agents shall in no case be liable for damages for any
2020 error with regard to the admission to or exclusion from the Building of any person. In case of
2021 invasion, mob, riot, public excitement, or other commotion, Landlord reserves the right to
2022 prevent access to the Building or the Real Property during the continuance thereof by any means
2023 it deems appropriate for the safety and protection of life and property.

2024       4.    No furniture, freight or equipment of any kind shall be brought into the Building
2025 without prior notice to Landlord. All moving activity into or out of the Building shall be
2026 scheduled with Landlord and done only at such time and in such manner as Landlord designates.
2027 No service deliveries (other than messenger services) will be allowed between hours of 4:00 p.m.
2028 to 6:00 p.m., Monday through Friday. Landlord shall have the right to prescribe the weight, size
2029 and position of all safes and other heavy property brought into the Building and also the times
2030 and manner of moving the same in and out of the Building. Safes and other heavy objects shall,
2031 if considered necessary by Landlord, stand on supports of such thickness as is necessary to
2032 properly distribute the weight. Landlord will not be responsible for loss of or damage to any
2033 such safe or property in any case. Any damage to any part of the Building, its contents,
2034 occupants or visitors by moving or maintaining any such safe or other property shall be the sole
2035 responsibility and expense of Tenant.

EXHIBIT B-1

the Building or carried up or down in the elevators, except between such hours and in such specific elevator as shall be designated by Landlord.

6.      The requirements of Tenant will be attended to only upon application at the management office for the Real Property or at such office location designated by Landlord. Employees of Landlord shall not perform any work or do anything outside their regular duties unless under special instructions from Landlord.

7.      Tenant shall not disturb, solicit, or canvass any occupant of the Real Property and shall cooperate with Landlord and its agents of Landlord to prevent the same.

8.      The toilet rooms, urinals, wash bowls and other apparatus shall not be used for any purpose other than that for which they were constructed, and no foreign substance of any kind whatsoever shall be thrown therein.  The expense of any breakage, stoppage or damage resulting from the violation of this rule shall be borne by the tenant who, or whose employees or agents, shall have caused it.

9.      Tenant shall not overload the floor of the Premises, nor mark, drive nails or screws, or drill into the partitions, woodwork or plaster or in any way deface the Premises or any part thereof without Landlord's prior written consent.

10.     Except for vending machines intended for the sole use of Tenant's employees and invitees, no vending machine or machines other than fractional horsepower office machines shall be installed, maintained or operated upon the Premises without the written consent of Landlord.

11.     Tenant shall not use or keep in or on the Premises, the Building, or the Real Property any kerosene, gasoline or other inflammable or combustible fluid or material.

12.     Tenant shall not without the prior written consent of Landlord use any method of heating or air conditioning other than that supplied by Landlord.

13.     Tenant shall not use, keep or permit to be used or kept, any foul or noxious gas or substance in or on the Premises, or permit or allow the Premises to be occupied or used in a manner offensive or objectionable to Landlord or other occupants of the Real Property by reason of noise, odors, or vibrations, or interfere in any way with other tenants or those having business therein.

14.     Tenant shall not bring into or keep within the Real Property, the Building or the Premises any animals, birds, bicycles or other vehicles.

15.     No cooking shall be done or permitted on the Premises, nor shall the Premises be used for the storage of merchandise, for lodging or for any improper, objectionable or immoral purposes.  Notwithstanding the foregoing, laboratory-approved equipment and microwave ovens may be used in the Premises for heating food and brewing coffee, tea, hot chocolate and similar beverages for employees and visitors, provided that such use is in accordance with all applicable federal, state and city laws, codes, ordinances, rules and regulations.

EXHIBIT B-2

LOSA2\329548.2

16.    Landlord will approve where and how telephone and telegraph wires are to be introduced to the Premises. No boring or cutting for wires shall be allowed without the consent of Landlord. The location of telephone, call boxes and other office equipment affixed to the Premises shall be subject to the approval of Landlord.

17.    Landlord reserves the right to exclude or expel from the Real Property any person who, in the judgment of Landlord, is intoxicated or under the influence of liquor or drugs, or who shall in any manner do any act in violation of any of these Rules and Regulations.

18.    Tenant, its employees and agents shall not loiter in or on the entrances, corridors, sidewalks, lobbies, halls, stairways, elevators, loading docks or any common areas of the Building for the purpose of smoking tobacco products or for any other purpose, nor in any way obstruct such areas, and shall use them only as a means of ingress and egress for the Premises.

19.    Tenant shall not waste electricity, water or air conditioning and agrees to cooperate fully with Landlord to ensure the most effective operation of the Building's heating and air conditioning system, and shall refrain from attempting to adjust any controls.

20.    Tenant shall store all its trash and garbage within the interior of the Premises. No material shall be placed in the trash boxes or receptacles if such material is of such nature that it may not be disposed of in the ordinary and customary manner of removing and disposing of trash in the vicinity of the Building without violation of any law or ordinance governing such disposal. All trash, garbage and refuse disposal shall be made only through entry-ways and elevators provided for such purposes at such times as Landlord shall designate.

21.    Tenant shall comply with all safety, fire protection and evacuation procedures and regulations established by Landlord or any governmental agency.

22.    Tenant shall assume any and all responsibility for protecting the Premises from theft, robbery and pilferage, which includes keeping doors locked and other means of entry to the Premises closed.

23.    No awnings or other projection shall be attached to the outside walls of the Building without the prior written consent of Landlord. No curtains, blinds, shades or screens shall be attached to or hung in, or used in connection with, any window or door of the Premises without the prior written consent of Landlord. All electrical ceiling fixtures hung in offices or spaces along the perimeter of the Building must be fluorescent and/or of a quality, type, design and bulb color approved by Landlord. Tenant shall abide by Landlord's regulations concerning the opening and closing of window coverings which are attached to the windows in the Premises, if any, which have a view of any interior portion of the Building or the common areas of the Building.

24.    The sashes, sash doors, skylights, windows, and doors that reflect or admit light and air into the halls, passageways or other public places in the Building shall not be covered or obstructed by Tenant, nor shall any bottles, parcels or other articles be placed on to windowsills.

25.    Tenant must comply with requests by Landlord concerning the informing of their employees of items of importance to Landlord.

EXHIBIT B-3

LOSA2\329548.2

2112        26.    Tenant shall not use in any space or in the public halls of the Building any hand
2113    trucks except those equipped with rubber tires and side guards or such other material-handling
2114    equipment as Landlord may approve.  Tenant shall not bring any other vehicles of any kind into
2115    the Building.

2116        27.    Without the written consent of Landlord, Tenant shall not use the name of the
2117    Building in connection with or in promoting or advertising the business of Tenant except as
2118    Tenant's address.

2119        Landlord reserves the right at any time to change or rescind any one or more of these
2120    Rules and Regulations, or to make such other and further reasonable non-discriminatory Rules
2121    and Regulations as in Landlord's judgment may from time to time be necessary for the
2122    management, safety, care and cleanliness of the Premises, Building, and the Real Property, and
2123    for the preservation of good order therein, as well as for the convenience of other occupants and
2124    tenants therein.  Landlord may waive any one or more of these Rules and Regulations for the
2125    benefit of any particular tenants, but no such waiver by Landlord shall be construed as a waiver
2126    of such Rules and Regulations in favor of any other tenant, nor prevent Landlord from thereafter
2127    enforcing any such Rules or Regulations against any or all tenants of the Real Property.
2128    Landlord shall not discriminatorily enforce such Rules and Regulations against Tenant.  Tenant
2129    shall be deemed to have read these Rules and Regulations and to have agreed to abide by them as
2130    a condition of its occupancy of the Premises.

EXHIBIT B-4