# EXHIBIT A-4

//0v0

## NOTICE OF LEASE TERM DATES

To: _____
_____
_____
_____

Re: Office Lease dated _____, , 20__ between _____, a _____ ("Landlord"), and _____, a _____ ("Tenant") concerning Suite _____ on floor(s) _____ of the office building located at _____, _____, California.

Gentlemen:

In accordance with the Office Lease (the "Lease"), we wish to advise you and/or confirm as follows:

1. The Premises are Ready For Occupancy, and the Lease Term shall commence on or has commenced on _____ for a term of _____ ending on _____.

2. Rent commenced to accrue on _____, in the amount of _____.

3. If the Lease Commencement Date is other than the first day of the month, the first billing will contain a pro rata adjustment. Each billing thereafter, with the exception of the final billing, shall be for the full amount of the monthly installment as provided for in the Lease.

4. Your rent checks should be made payable to _____ at _____.

5. The exact number of rentable square feet within the Premises is _____ square feet.

6. Tenant's Share as adjusted based upon the effect number of rentable square feet within the Premise is _____%.

"Landlord":

_____,
a _____

By:_____
Its:_____

EXHIBIT C-1

LOSA2\329548.2

2164    By: _____
2165    Its: _____

2166    Agreed to and Accepted as
2167    of _____, 20___.

2168    "Tenant":

2169    _____,
2170    a _____

2171

2172    By: _____
2173    Its: _____

2174

EXHIBIT C-2

LOSA2\329548.2

# WORK LETTER AGREEMENT

EXHIBIT "D"

<u>WORK LETTER AGREEMENT</u>

This WORK LETTER AGREEMENT ("**Agreement**") is being entered into as of _____, 2007, between SWC 800 WILSHIRE, LLC, a California limited liability company ("**Landlord**") and 800 WILSHIRE GROUP, LLC, a California limited liability company ("**Tenant**"), in connection with the execution of the Lease between Landlord and Tenant dated of even date herewith ("**Lease**"), who hereby agree as follows:

1. <u>General</u>.

    (a) The purpose of this Agreement is to set forth how the interior improvements in the Premises ("**Tenant Improvements**") are to be constructed, who will do the construction of the Tenant Improvements, who will pay for the construction of the Tenant Improvements, and the time schedule for completion of the construction of the Tenant Improvements.

    (b) Except as defined in this Agreement to the contrary, all terms utilized in this Agreement shall have the same meaning as the defined terms in the Lease.

    (c) The provisions of the Lease, except where clearly inconsistent or inapplicable to this Agreement, are incorporated into this Agreement.

    (d) Except for the Tenant Improvements to be constructed pursuant to this Agreement, Tenant accepts the Premises in its "as is" condition and acknowledges that it has had an opportunity to inspect the Premises prior to signing the Lease.

2. <u>Commencement Date</u>. The Commencement Date shall be determined in accordance with Section 2.2 of the Lease.

3. <u>Construction</u>. Landlord, as soon as this Agreement is executed, shall make arrangements to construct, as soon as reasonably possible, consistent with industry custom and practice, and at its sole cost and expense, the Tenant Improvements indicated on the space plans dated [*_____*] and prepared by [_____*]("Plans"). In the event that Tenant requests any changes to such Plans, Landlord shall not unreasonably withhold its consent to any such changes, providing the changes do not adversely affect the Building's structure, systems, equipment or appearance, but if such changes increase the cost to Landlord of constructing the Tenant Improvements shown on the Plans, Tenant shall pay such increased costs to Landlord at such time as the request is approved by Landlord. The costs charged by Landlord to Tenant caused by Tenant's requesting changes to the Plans shall be the amount of money Landlord has to pay to cause the

Tenant Improvements, as reflected by revised Plans, to be constructed above the costs that Landlord would have had to pay to cause the Tenant Improvements to be constructed if no changes had been made to the Plans ("**Differential**"), plus an amount equal to five percent (5%) of the Differential to compensate Landlord for its time and efforts in connection with such changes. If such changes delay Landlord's completion of the work shown on the Plans, then such delay shall constitute "**Tenant Delays**". Any other actions of Tenant, or inaction by Tenant, which delays Landlord in completing the Tenant Improvements shown on such Plans shall also constitute Tenant Delays. Whenever possible and practical, Landlord will utilize, for the construction of the Tenant Improvements, the items specified on the Plans. However, whenever Landlord determines in its judgment that it is not practical or efficient to use such items and materials, Landlord reserves the right to substitute comparable items and materials upon receipt of Tenant's consent, which consent shall not be unreasonably withheld or delayed. If Tenant refuses to grant such consent, and Landlord is delayed in causing the Premises to be Ready For Occupancy because of Tenant's failure to permit Landlord to substitute new items or materials, such delay shall constitute Tenant Delays.

In the event the cost of the design and construction of the Tenant Improvements exceeds an amount equal to Fifty-Three Thousand Four Hundred Ninety and 00/100 Dollars ($53,490.00) ($30.00 per rentable square feet of the Premises) ("**Tenant Improvement Allowance**"), Tenant shall pay such excess cost within ten (10) business days after receipt by Tenant of written request therefor from Landlord. Tenant shall have the right to use any portion of the Tenant Improvement Allowance towards the installation of a closed circuit TV system in the Premises.

4. Ready for Occupancy. The term "**Ready For Occupancy**" means that Landlord has completed the Tenant Improvements and other work that it is obligated to perform pursuant to this Agreement, and that this work shall be deemed complete, notwithstanding the fact that minor details of construction, mechanical adjustments or decorations which do not materially interfere with Tenant's use of the Premises remain to be performed (items normally referred to as "**Punch-List**" items). The Premises shall be deemed "**Ready For Occupancy**" even though Tenant's furniture, telephones, telexes, telecopiers, photocopy machines, computers and other business machines or equipment have not been installed (provided that no conduct by Landlord has prevented the installation of such machines, furniture and equipment), the purchase and installation of which shall be Tenant's sole responsibility. Landlord shall cause the Punch-List items to be corrected as soon as reasonably possible and practical.

**LANDLORD:**

**SWC 800 WILSHIRE, LLC,**
a California limited liability company

By: PRUDENTIAL 800 WILSHIRE GENERAL PARTNERSHIP,
a California general partnership,
Its Managing Member

By: PRUDENTIAL INVESTMENT MANAGEMENT, INC.,

EXHIBIT D-2

LOSA2\329548.2

| | |
|---|---|
| 2253 | a New Jersey corporation, |
| 2254 | Its Authorized Manager |
| | By: _Soultana Recigl_ (signature) |
| 2255 | Name: _Soultana Recigl_ |
| 2256 | Title: _Vice President_ |
| 2257 | |
| 2258 | **TENANT:** |
| | **800 WILSHIRE GROUP, LLC,** |
| 2259 | a California limited liability company |
| 2260 | |
| | By: (signature) |
| 2261 | Name: _gabriel mormes_ |
| 2262 | Its: _managing partner_ |
| 2263 | |
| 2264 | |

EXHIBIT D-3

# EXHIBIT E

## ESTOPPEL CERTIFICATE

TO: _____
_____
_____
_____

Attn:

_____ ("Tenant") hereby certifies as follows:

1. The undersigned is the Tenant under that certain Office Lease dated _____, 20__ (the "Lease"), by _____ ("Landlord") as Landlord and the undersigned as Tenant, covering a portion of the property located at _____ (the "Property").

2. Pursuant to the Lease, Tenant has leased approximately _____ square feet of space (the "Premises") at the Property and has paid to Landlord a security deposit of $_____. The term of the Lease commenced on _____, 20__ and the expiration of the Lease is _____, 20__. Tenant has paid rent through _____, 20__. The next rental payment in the amount of $_____ is due on _____, 20__. Tenant is required to pay _____ percent (___%) of all annual operating expenses for the Property in excess of _____.

3. Tenant is entitled to _____ parking spaces at a charge of $_____ per month per space.

4. The Lease provides for an option to extend the term of the Lease for _____ years. The rental rate for such extension term is as follows: _____
_____. Except as expressly provided in the Lease, and other documents attached hereto, Tenant does not have any right or option to renew or extend the term of the Lease, to lease other space at the Property, nor any preferential right to purchase all or any part of the Premises or the Property.

5. True, correct and complete copies of the Lease and all amendments, modifications and supplements thereto are attached hereto and the Lease, as so amended, modified and supplemented, is in full force and effect, and represents the entire agreement between Tenant and Landlord with respect to the Premises and the Property. There are no amendments, modifications or supplements to the Lease, whether oral or written, except as follows (include the date of such amendment, modification or supplement): _____
_____
_____
_____
_____

EXHIBIT E-1

2303  6. All apace and improvements leased by Tenant have been completed and furnished
2304 in accordance with the provisions of the Lease, and Tenant has accepted and taken possession of
2305 the Premises.

2306  7. Landlord is not in any respect in default in the performance of the terms and
2307 provisions of the Lease. Tenant is not in any respect in default under the Lease and has not
2308 assigned, transferred or hypothecated the Lease or any interest therein or subleased all or any
2309 portion of the Premises.

2310  8. There are no offsets or credits against rentals payable under the Lease and no free
2311 periods or rental concessions have been granted to Tenant, except as follows:_____
2312 _____
2313 _____
2314 _____
2315 _____.

2316  9. Tenant has no actual or constructive knowledge of any processing, use, storage,
2317 disposal, release or treatment of any hazardous or toxic materials or substances on the Premises
2318 or the Property except as follows (if none, state "none"): _____
2319 _____
2320 _____
2321 _____

2322 This Certificate is given to _____ with the understanding
2323 that _____ will rely hereon in connection with the conveyance of
2324 the Property of which the Premises constitute a part to _____. Following any such
2325 conveyance, Tenant agrees that the Lease shall remain in full force and effect and shall bind and
2326 inure to the benefit of the _____ and its successor in interest as if no purchase
2327 had occurred.

2328 DATED: _____, 20__

2329                             "TENANT"

2330                             _____
2331                             _____

2332

EXHIBIT E-2

LOSA2\329548.2

2333
2334   [ATTACH LEASE AND AMENDMENTS TO THIS CERTIFICATE]

EXHIBIT E-3

LOSA2\329548.2

ORIGINAL

## EXHIBIT C

### NOTICE OF LEASE TERM DATES

To:   800 WILSHIRE GROUP LLC
      800 Wilshire Boulevard, Suite 640
      Los Angeles, California 90017

Re:   Office Lease dated <u>September 10, 2007</u> between SWC 800 Wilshire, LLC, a California limited liability company ("Landlord"), and <u>800 Wilshire Group LLC</u>, a <u>California limited liability company</u> ("Tenant") concerning Suite <u>640</u> on the <u>Sixth</u> floor(s) of the office building located at <u>800 Wilshire Boulevard, Los Angeles</u>, California.

Gentlemen:

In accordance with the Office Lease (the "Lease"), we wish to advise you and/or confirm as follows:

1. The Premises are Ready for Occupancy, and the Lease Term shall commence on or has commenced on <u>November 12, 2007</u> for a term of <u>Five (5) Years and Two (2) Months</u> ending on <u>January 11, 2013</u>.

   Substantial Completion of Tenant Improvements occurred on <u>November 9, 2007</u> and Tenant took Beneficial Occupancy of the Leased Premises on <u>November 12, 2007</u>.

2. Rent commenced to accrue on <u>November 12, 2007</u>, in the amount of <u>$4,160.33</u>. Landlord shall abate Tenant's obligations to pay Base Rent for the first Two (2) month's following the Commencement Date, for the period of <u>November 12, 2007</u> through <u>January 11, 2008</u>.

3. If the Lease Commencement Date is other than the first day of the month, the first billing will contain a pro rata adjustment. Each billing thereafter, with the exception of the final billing, shall be for the full amount of the monthly installment as provided for in the Lease.

4. Your rent check should be made payable to **SWC 800 Wilshire, LLC** at **800 Wilshire Boulevard, Suite 1425, Los Angeles, California 90017-2604**.

5. The exact number of rentable square feet within the Premises is <u>1,783</u> rentable square feet.

6. Tenant's Share as adjusted based upon the effect number of rentable square feet within the Premises is <u>0.79</u> %.

1

# EXHIBIT C

## NOTICE OF LEASE TERM DATES

"Landlord":

SWC 800 WILSHIRE, LLC,
a California limited liability company

By: PRUDENTIAL 800 WILSHIRE GENERAL PARTNERSHIP,
a California general partnership,
Its: Managing Member

By: PRUDENTIAL INVESTMENT MANAGEMENT, INC., a New Jersey corporation,
Its: Authorized Manager
By: *(signature)*
Name: Sou Itana Reigle
Title: Vice President

Agreed to and Accepted as of _11/30_, 2007.

"Tenant":

800 WILSHIRE GROUP LLC
a California limited liability company

By: *(signature)*
Its: _____

2

# FIRST AMENDMENT TO LEASE
## BETWEEN
## SWC 800 WILSHIRE, LLC
## AND
## 800 WILSHIRE GROUP, LLC

THIS FIRST AMENDMENT TO LEASE (this "**Amendment**") is made as of February 25, 2009, by and between SWC 800 WILSHIRE, LLC, a California limited liability company ("**Landlord**"), and 800 WILSHIRE GROUP, LLC, a California limited liability company, ("**Tenant**").

## RECITALS

WHEREAS, Landlord and Tenant are parties to that certain 800 Wilshire Boulevard Office Lease dated September 10, 2007 ("**Lease**"), with respect to certain premises located at 800 Wilshire Boulevard, Los Angeles, California (the "**Building**").

WHEREAS, pursuant to the Lease, Tenant leases from Landlord certain premises consisting of approximately 1,783 rentable square feet, located on the sixth (6th) floor of the Building and identified as Suite 640 (the "**Premises**").

WHEREAS, Landlord and Tenant desire to amend the Lease to extend the Term of the Lease and modify other provisions of the Lease, all as more particularly set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Landlord and Tenant agree that the Lease is amended as follows:

1.  **DEFINED TERMS.** Capitalized terms used and not otherwise defined herein shall have the same meanings ascribed to them in the Lease.

2.  **TERM OF THE LEASE.** Effective as of the date hereof, the Term of the Lease is hereby extended for an additional period of six (6) months (the "**Extended Term**"), so that the Extended Term shall, unless terminated sooner pursuant to the terms of the Lease, expire on July 11, 2013 ("**Revised Lease Expiration Date**"). All references to "**Term**" in the Lease and this Amendment shall be deemed references to the Term as extended by this Amendment and all references to "**Lease Expiration Date**" shall be deemed references to the Revised Lease Expiration Date.

    For purposes of the Lease, the "**Lease Commencement Date**" shall be deemed to be November 12, 2007. Accordingly, any and all references to Lease Commencement Date in the Lease shall be deemed to refer to November 12, 2007.

WEST\21651882.3

3.  **BASE RENT**.

    (a)  Base Rent. Effective as of the Lease Commencement Date and in addition to Direct Expense and all other costs and expenses payable pursuant to the Lease, Tenant shall pay the following Base Rent for the Premises, in accordance with the terms of Article 3 of the Lease.

| Lease Months | Annual Base Rent | Monthly Installment of Base Rent | Rental Rate per Rentable Square Feet |
|---|---|---|---|
| Months 1-14 | $49,924.00 | $4,160.33 | $2.33 (with 3% annual increase thereafter) |
| Months 15-26 | $51,421.68 | $4,285.14 | |
| Months 27-38 | $52,964.28 | $4,413.69 | |
| Months 39-50 | $54,553.20 | $4,546.10 | |
| Months 51-62 | $56,189.76 | $4,682.48 | |
| Months 63-68 | $57,875.45 | $4,822.95 | |

    (b)  Rent Abatement. So long as no event of default occurs under the Lease, Tenant shall not be required to pay Base Rent for the six (6) month period commencing as of November 1, 2008 and expiring as of April 30, 2009 (the "**Abatement Period**") Accordingly, Tenant's obligation to commence its payment of Base Rent shall re-commence on May 1, 2009. Notwithstanding the foregoing, all other terms and conditions of the Lease shall apply to the Abatement Period, including without limitation, paying for any other above-standard services and parking charges. In the event of a default by Tenant under the terms of the Lease, as amended hereby, which results in either the early termination of the Lease and/or Tenant vacating and/or being evicted from the Premises, then as part of the recovery permitted Landlord under the Lease, Landlord shall be entitled to a recovery of the Base Rent which was abated under the provisions of this Section 3(b); i.e., such Base Rent shall not be deemed to have been forgiven or abated, but shall become immediately due and payable as unpaid Rent which had been earned at the date of default.

4.  **DELINQUENT ADDITIONAL RENT**. Tenant hereby acknowledges that Tenant is delinquent in the payment of (a) Operating Expenses in the amount of $505.44 as of February 28, 2009, and (b) miscellaneous sundry charges in the amount of $462.00 as of February 28, 2009, for a total of $967.44 ("**Outstanding Rent**"). Concurrent with the execution by Tenant of his Amendment, Tenant shall pay such Outstanding Rent.

5.  **BROKERS**. Tenant represents and warrants to Landlord that it has not engaged any other broker, finder or other person who would be entitled to any commission or fees in respect of the negotiation, execution or delivery of this Amendment, and shall indemnify, defend and hold harmless Landlord against any loss, cost, liability or expense incurred by Landlord as a result of any claim asserted by any such broker, finder or other person, including CB Richard

2

Ellis, Inc. ("**Landlord's Broker**") on the basis of any arrangements or agreements made or alleged to have been made by or on behalf of Tenant. Landlord's Broker shall each be compensated pursuant to the terms of separate express written agreements specifying the commission amounts and the terms of payment.

6. CONTINUING EFFECTIVENESS. The Lease, except as amended hereby, remains unamended, and, as amended hereby, remains in full force and effect.

7. COUNTERPARTS. This Amendment may be executed in counterparts, each of which shall constitute an original, and all of which, together, shall constitute one document.

8. EXECUTION BY BOTH PARTIES. Submission of this instrument for examination or signature by Tenant does not constitute a reservation of or option to lease, and it is not effective as an amendment to lease or otherwise until execution by and delivery to both Landlord and Tenant, and execution and delivery hereof.

9. AUTHORIZATION The parties signing on behalf of Tenant each hereby represents and warrants that such party has the capacity set forth on the signature pages hereof as has full power and authority to bind Tenant to the terms hereof. Two (2) authorized officers must sign on behalf of the Tenant and this Amendment must be executed by the president or vice-president and the secretary or assistant secretary of Tenant, unless the bylaws or a resolution of the board of directors shall otherwise provide. In such case, the bylaws or a certified copy of the resolution of Tenant, as the case may be, must be furnished to Landlord.

**(SIGNATURES ON NEXT PAGE)**

**IN WITNESS WHEREOF,** the parties hereto have executed this Amendment as of the date first above written.

LANDLORD:     SWC 800 WILSHIRE, LLC
              a California limited liability company

              By:   PRUDENTIAL 800 WILSHIRE GENERAL
                    PARTNERSHIP,
                    a California general partnership,
                    Its Managing Member

                    By:   PRUDENTIAL INVESTMENT
                          MANAGEMENT, INC.,
                          a New Jersey corporation,
                          Its Authorized Manager

                          By: _____
                          Name: Robert Jeans
                          Title: Vice President

TENANT:       800 WILSHIRE GROUP, LLC,
              a California limited liability company

              By: _____
              Name: Gabriel Mepples
              Title: Managing Partner